```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                     :
AURELIO MARQUEZ-COROMINA
                                     :
     v.                              :    Civil Action No. DKC 2006-3211
                                     :
LISA J.W. HOLLINGSWORTH
                                     :
```

**MEMORANDUM OPINION**

Pending before the court is a petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2241, filed by Petitioner Aurelio Marquez-Coromina, a detainee of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"). Petitioner is presently confined at the Federal Correctional Institute in Cumberland, Maryland ("Cumberland FCI"), and challenges the authority of Respondent Lisa J.W. Hollingsworth, Warden of Cumberland FCI, and ICE to detain him following the issuance of a final administrative order of removal over eighteen years ago. The issues have been fully briefed and a hearing has been conducted. For the reasons that follow, Petitioner's application will be denied.

**I. Background**

The underlying facts of the case are undisputed. Petitioner is a native of Cuba who arrived in the United States in 1980 as part of the Mariel boatlift. *See Palma v. Verdeyen*,

676 F.2d 100, 101 (4th Cir. 1982) (describing circumstances of the Mariel boatlift). On May 17, 1980, he was granted immigration parole by the former Immigration and Naturalization Service ("INS").[1]  See 8 U.S.C. § 1182(d)(5). On February 23, 1984, Petitioner was convicted in Florida of robbery with a firearm related to an incident in which he threatened the life of the victim. He was sentenced to a twenty-year term in Florida state prison.

During his incarceration, INS revoked Petitioner's immigration parole and initiated exclusion proceedings, and on August 27, 1991, he was ordered excluded from the United States.[2] In August 1995, Petitioner was released from prison to an immigration detainer pending removal. Efforts to repatriate him to Cuba were unsuccessful, however, and the parties agree that there is not now, nor has there ever been, a likelihood that

---

[1] On March 3, 2003, INS was abolished and its functions were transferred to the Department of Homeland Security.

[2] In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which changed much of the terminology used in the classification of aliens under the Immigration and Naturalization Act. Prior to the IIRIRA, aliens ineligible for admission to the United States were classified as "excludable," while those who gained admission were referred to as "deportable." "Excludable" aliens, such as Petitioner, are now referred to as "inadmissible," and the former "exclusion proceedings" are now known as "removal proceedings." See Clark v. Martinez, 543 U.S. 371, 376 n.3 (2005); Morales-Fernandez v. I.N.S., 418 F.3d 1116, 1118 (10th Cir. 2005).

Petitioner's removal will be effected.  Consequently, Petitioner has remained in immigration custody ever since his release from Florida state prison, a period of over fourteen years.

While in INS custody, Petitioner underwent a series of mental health evaluations and was ultimately diagnosed as suffering from chronic paranoid schizophrenia.[3]  Petitioner experiences messianic delusions and auditory hallucinations, often of a homicidal or suicidal nature, and refuses to take medication to treat this condition.  Based on his violent criminal history, psychiatric instability, and refusal to accept treatment, a recent psychiatric evaluator opined that Petitioner would present a danger to the public if he were released.

On November 28, 2006, Petitioner filed a *pro se* petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2241, alleging that he was being unlawfully detained past the ninety-

---

[3] On June 5, 2007, the court ordered the Government to supplement its response by providing copies of the medical and psychiatric evaluations introduced in the immigration proceedings, a copy of a 2007 evaluation written by Dr. Samuel O. Fadare, M.D., a transcript or audiotape of the immigration proceedings, and the dates of previous hearings held to consider Petitioner's continued detention. (Paper 8).  On June 22, 2007, the Government responded, filing these materials under seal and requesting a sealing order.  (Paper 10).  That request will be granted.  Petitioner later filed the mental health evaluation performed by Dr. Neil Blumberg, requesting that it be placed under seal, given its private nature and the lack of sufficient alternative. (Paper 20).  That motion was granted. (Paper 27). It is not necessary to refer to any of the sealed material in this opinion.

3

day statutory removal period authorized by 8 U.S.C. § 1231(a)(1)(A), and in violation of his rights under the Due Process Clause of the Fifth Amendment. (Paper 1). On February 2, 2007, Respondent moved for an extension of time in which to respond, citing ongoing administrative proceedings related to Petitioner's detention and attaching a January 30, 2007, "Decision" issued by the Assistant Secretary for ICE, which authorized Petitioner's continued detention, under 8 C.F.R. § 241.14(f), on the ground that his release "would pose a special danger to the public." (Paper 4, Ex. A). This court granted Respondent's requested extension. (Paper 5).

Meanwhile, the ICE decision was referred to an Immigration Judge for a preliminary hearing, pursuant to 8 C.F.R. § 241.14(h), to determine whether the evidence of special circumstances purportedly justifying Petitioner's continued detention established reasonable cause to warrant a merits hearing under 8 C.F.R. § 241.14(i). At the conclusion of the February 20, 2007, hearing, the Immigration Judge found reasonable cause for an evidentiary hearing, which was held on March 19, 2007. At the merits hearing, ICE presented medical documentation in support of its position, as well as the testimony of Dr. Lynn Liebermann, who had recently evaluated Petitioner and opined that he continued to suffer from untreated, chronic paranoid schizophrenia, that there was a

4

potential for violent behavior associated with his condition, and that Petitioner posed a threat to the safety of others.[4]  In consideration of the evidence presented, the Immigration Judge issued a decision and order on March 27, 2007, upholding the ICE decision to continue Petitioner's immigration detention.  (Paper 6, Ex. 1).

Petitioner did not appeal that decision to the Board of Immigration Appeals, and on May 2, 2007, Respondent filed papers opposing his *habeas* petition on the ground that this court was without jurisdiction to decide the case because Petitioner had failed to exhaust his administrative remedies.  (Paper 6).  Upon the court's order, counsel was appointed to represent Petitioner, a hearing was scheduled, and both parties filed pre-hearing memoranda.  Following a February 6, 2009, hearing, both parties submitted post-hearing memoranda addressing one discrete issue raised at the hearing.[5]

---

[4] Notably, Dr. Liebermann also opined that Petitioner's psychiatric symptoms could improve if he were to take prescribed medication.  Petitioner acknowledged in his testimony that he has refused to do so, however.

[5] The court then delayed issuing this opinion until the United States Supreme Court decided whether to grant *certiorari* review in *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008, *cert. denied*, 2009 WL 1982389 (Dec. 14, 2009).

**II. Analysis**

    **A.   Exhaustion of Administrative Remedies**

Respondent initially contends that Petitioner's failure to file an administrative appeal of the Immigration Judge's ruling upholding the ICE decision renders this court without jurisdiction to consider his *habeas* challenge. This argument is flawed in multiple respects.

First, it ignores that Petitioner filed his *habeas* petition on November 28, 2006, prior to the January 30, 2007, ICE decision that set in motion the administrative proceedings from which Respondent contends Petitioner was required to appeal. Clearly, the *habeas* petition could have no relation to an administrative process that had not yet transpired. Moreover, as Respondent observes in her opposition papers, "[t]he petition does not seek judicial review of Petitioner's final order of exclusion, but challenges only his continued detention pending removal." (Paper 6, at 1). Where, as here, a *habeas* petitioner "challenges neither the Attorney General's power to exclude him nor his authority to revoke his immigration parole and detain him pending exclusion," but rather "contends that [ICE] lacks the authority to detain him indefinitely, and that such detention violates his rights to substantive and procedural due process," his claims are properly raised in a § 2241 petition. *Arango Marquez v. I.N.S.*, 346 F.3d 892, 896 (9th Cir. 2003)

6

(internal marks omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"). Accordingly, the court has jurisdiction to adjudicate the claims raised in Petitioner's *habeas corpus* application.

**B.   The Applicable Regulatory Scheme**

Although the record in this case is silent as to the statutory and regulatory scheme applied to Petitioner prior to the January 30, 2007, ICE "decision," it is undisputed that he is presently detained pursuant to the authority of 8 U.S.C. § 1231(a)(6) and the implementing regulations of 8 C.F.R. § 241.14.  As the Supreme Court of the United States explained in *Zadvydas*, 533 U.S. at 682:

> When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory "removal period," during which time the alien normally is held in custody.
>
> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
>> "An alien ordered removed [1] who is inadmissible . . . [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been

7

> determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision. . . ." 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V).

As the *Zadvydas* Court observed, the relevant statute distinguishes three categories of aliens. In that case, the Court considered whether the "post-removal-period statute authorizes the Attorney General to detain a removable alien [*i.e.*, the second category of alien who was lawfully admitted, but subsequently violated a condition of admission] *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682 (emphasis in original). Employing the doctrine of constitutional avoidance, the Court held that the statute implicitly authorizes continued detention for a presumptively reasonable six-month period. *Id.* at 701. In *Clark v. Martinez*, 543 U.S. 371, 378 (2005), a case considering the post-removal order detention of two Mariel Cubans, the Court applied its holding in *Zadvydas* to all three categories of aliens in § 1231(a)(6):

> The operative language of § 1231(a)(6), "may be detained beyond the removal period," applies without differentiation to all three categories of aliens that are its subject. To give these same words a different meaning for each category would be to invent a

8

>statute rather than interpret one. As the Court in *Zadvydas* recognized, the statute can be construed "literally" to authorize indefinite detention, *id.*, at 689, 121 S.Ct. 2491, or (as the Court ultimately held) it can be read to "suggest [less than] unlimited discretion" to detain, *id.*, at 697, 121 S.Ct. 2491. It cannot, however, be interpreted to do both at the same time.

In the wake of *Zadvydas*, but prior to *Clark*, the Attorney General promulgated a set of regulations designed to narrow the scope of his authority to detain aliens beyond the post-removal order period in order to comply with the Supreme Court's decision. *See* 8 C.F.R. §§ 241.13, 241.14. These regulations provide for the release of the vast majority of aliens where there is no likelihood of removal, but carve out an exception applying to a narrow subset that the Attorney General has "determined to be specially dangerous." 8 C.F.R. § 241.14(f). Section 241.14(f)(1) provides:

>Subject to the review procedures provided in this section, the Service shall continue to detain an alien if the release of the alien would pose a special danger to the public, because:
>
>(i) The alien has previously committed one or more serious crimes of violence as defined in 18 U.S.C. 16;
>
>(ii) Due to a mental condition or personality disorder and behavior associated with that condition or disorder, the alien is likely to engage in acts of violence in the future; and

>(iii) No condition of release can reasonably be expected to ensure the safety of the public.

Here, the Government argues, and administrative courts have thus far agreed, that Petitioner's continued detention is authorized pursuant to this regulation. Indeed, Petitioner does not contest that the regulatory criteria apply to him; rather, he challenges the statutory and constitutional authority to detain him in light of two decisions in other circuits interpreting *Zadvydas* and *Clark*. *See Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008); *Tuan Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004). Respondent cites a decision of the United States Court of Appeals for the Tenth Circuit, *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008), in support of her argument that 8 C.F.R. § 241.14(f)(1) is a reasonable interpretation of 8 U.S.C. § 1231(a)(6).

At the hearing on Petitioner's application, however, this court identified a threshold issue concerning the applicable regulations, which it asked the parties to address in post-hearing briefing. Specifically, the court observed that 8 C.F.R. § 241.14(a)(1) provides that it "does not apply to aliens who are not subject to the special review provisions under § 241.13," and that § 241.13(b)(3)(i) provides, in turn, that it does not apply to "Mariel Cubans whose parole is governed by § 212.12 of this chapter." Thus, on the surface, it appears that

10

the continued detention of Petitioner, a Mariel Cuban, would be governed by 8 C.F.R. § 212.12, which sets forth a system of annual parole review by a "Cuban Review Panel," rather than the "specially dangerous" provision of 8 C.F.R. § 241.14.

In her post-hearing memorandum, Respondent asserts that the Supreme Court's decision in *Clark* effectively abolished any prior distinction between inadmissible aliens, such as Mariel Cubans, and other classes of aliens. According to Respondent, although the explicit jurisdictional limitation of 8 C.F.R. § 241.13(c)(3)(i) curiously remains unaltered despite the passage of approximately five years since the *Clark* decision, § 212.12, in essence, has been rendered a regulatory dead letter. Nevertheless, Respondent contends, deletion of the language excluding Mariel Cubans from § 241.13(c)(3)(i) was "unnecessary and its continued existence does not diminish the applicability of 8 C.F.R. §§ 241.13 and 241.14 to the case at bar because the parole from custody of Mariel Cubans [post-*Clark*] is no longer 'governed by § 212.12 of this chapter.'" (Paper 25, at 6-7). As support for her argument, Respondent attaches an internal ICE memorandum issued by Acting Director Victor X. Cerda ("the Cerda Memorandum"), purportedly providing "interim guidance regarding Post-Order Custody Reviews (POCR) after the Supreme Court decision in *Clark v. Martinez*." (Paper 25, Ex. A). The Cerda Memorandum directs that "[e]ffective immediately, <u>all</u> aliens

11

detained post-final order for 180 days will receive custody reviews pursuant to the regulations under 8 CFR § 241.13," and that "[c]ustody reviews for Mariel Cubans under 8 CFR § 212.12 are no longer in effect, and therefore Cuban Review Plan (CRP) panels and procedures are to be discontinued." (*Id*. at 2 (emphasis in original)). In response, Petitioner observes that the regulations at issue have not been amended in the five years since *Clark* – although they clearly could have been, as evidenced by the post-*Zadvydas* modifications – and argues that Respondent cannot properly rely on the Cerda Memorandum as having any legal force. According to Petitioner, 8 C.F.R. § 212.12 applies to his circumstances and his present detention under 8 C.F.R. § 241.14(f)(1) is unauthorized.

Neither of these arguments is particularly persuasive. Section 212.12(a) clearly defines the category of alien to which it applies, and Petitioner falls within that definition:

> This section applies to any native of Cuba who last came to the United States between April 15, 1980, and October 20, 1980 (hereinafter referred to as Mariel Cuban) and who is being detained by the Immigration and Naturalization Service (hereinafter referred to as the Service) pending his or her exclusion hearing, or pending his or her return to Cuba or to another country. It covers Mariel Cubans who have never been paroled as well as those Mariel Cubans whose previous parole has been revoked by the Service. It also applies to any Mariel Cuban, detained under the authority of the Immigration and Nationality Act in any

12

> facility, who has not been approved for release or who is currently awaiting movement to a Service or Bureau of Prisons (BOP) facility. In addition, it covers the revocation of parole for those Mariel Cubans who have been released on parole at any time.

8 C.F.R. § 212.12(a). On the other hand, the regulation otherwise appears to have no application to Petitioner's present circumstances. It addresses the procedure by which immigration parole may be granted or denied to Mariel Cubans; establishes the body responsible for making such decisions; sets forth the criteria and procedure for determining parole eligibility; and enumerates the circumstances in which immigration parole may be revoked. Here, it is undisputed that Petitioner was initially granted immigration parole upon his arrival in the United States in 1980, that his parole was revoked in or around 1991, and that he was ordered removed shortly thereafter. The regulation does not address continued detention after the removal order has been issued; indeed, it is entitled "Parole determinations and revocations respecting Mariel Cubans," and its scope appears to be limited to those discrete determinations.

The court agrees with Petitioner that in the absence of any post-*Clark* modifications to the applicable regulations, the Cerda Memorandum provides no legal footing for Respondent; however, the procedure prescribed by the memorandum is consistent with the few cases decided after *Clark* that have

13

addressed the continued detention of Mariel Cubans. *See Castro-Morales v. Ebbert*, 331 Fed.Appx. 191, 192 (3rd Cir. 2009) (petitioner initially detained under 8 C.F.R. § 212.12, and detention continued, post-*Clark*, under 8 C.F.R. § 241.14(f)); *Sanchez v. Attorney General, U.S.*, 146 Fed.Appx. 547, 548 (3rd Cir. 2005) (petitioner detained, pre-*Clark*, pursuant to 8 C.F.R. § 212.12, and released, post-*Clark*, after a "repatriation review" pursuant to 8 C.F.R. § 241.13 determined "no likelihood of removal and that petitioner is not a special category alien"); *see also Armentero v. I.N.S.*, 412 F.3d 1088, 1089 (9th Cir. 2005) (Ferguson, J., concurring) (noting that *Zadvydas* and *Clark* "invite doubt as to the constitutionality of the current Cuban Review Plan" under § 212.12). In fact, there are no reported cases in the five-year period since *Clark* was decided upholding the continued detention of Mariel Cubans under 8 C.F.R. § 212.12. While this is undoubtedly due, in part, to the fact that *Clark* mandated the release of most Mariel Cubans then-remaining in detention, it is also unquestionably true that *Clark* removed the distinctions among the three categories of aliens identified in 8 U.S.C. § 1231(a)(6), at least insofar as post-removal order detention is concerned. Those distinctions appear to have served the basis for the separate treatment of Mariel Cubans under § 212.12, and that basis is no longer viable. While it is mystifying that the regulatory language has

14

not been amended to comport with the Supreme Court's decision in *Clark*, the court is satisfied that 8 C.F.R. § 212.12 has no continuing application to Petitioner's case.[6]

### C.   Continued Detention Under 8 C.F.R. § 241.14(f)

Having determined that 8 C.F.R. § 212.12 does not apply to Petitioner, and consequently that the regulatory scheme under 8 C.F.R. § 241.14 may apply, the question remains as to whether § 241(f)(1), which authorizes the continued detention of aliens who "pose a special danger to the public," is a reasonable interpretation of 8 U.S.C. § 1231(a)(6), in light of *Zadvydas* and *Clark*. While the Fourth Circuit has not considered this

---

[6] The *Clark* decision itself provides support for this conclusion. Although 8 C.F.R. § 241.14 had been promulgated by the time the case was decided, it was not at issue in *Clark*, as both aliens were detained by the INS before 2000, well before the adoption of § 241.14 and *Zadvydas*. *See Hernandez-Carrera*, 547 F.3d at 1252 n.2. At least one of the two Mariel Cubans whose continued detention was the subject of that case had been released on a one-year parole subject to revocation by the Cuban Review Panel under 8 C.F.R. § 212.12(h). *Clark*, 543 U.S. at 376 n.3. In a concurring opinion, moreover, Justice O'Connor observed that "any alien released as a result of today's holding remains subject to the conditions of supervised release," citing 8 C.F.R. § 241.5. *Id*. at 387. Section 241.5 provides, in part, that "[a]n alien released pursuant to § 241.4 shall be released pursuant to an order of supervision." Section 241.4(b)(2) provides, in turn, that "[t]he review procedures in this section do not apply to any inadmissible Mariel Cuban"; rather, "the determination whether to release on parole or to revoke such parole, or to detain, shall in the case of a Mariel Cuban be governed by the procedures in 8 C.F.R. § 212.12." Thus, the decision may fairly be interpreted as applying the § 241 regulatory scheme to Mariel Cubans, despite express regulatory language to the contrary.

15

question, three other circuits have, reaching conflicting results. Petitioner urges the court to adopt the reasoning of *Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004), which held that *Zadvydas* did not acknowledge an exception for the indefinite detention of an alien deemed to be dangerous to the public due to an alleged mental illness, and *Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008), which reached the same conclusion, after *Clark*. Respondent argues that the Tenth Circuit's decision in *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008), *cert. denied*, 2009 WL 1982389 (Dec. 14, 2009), which found that the agency's interpretation of the statute was owed deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), should be followed.

The court agrees with the rationale employed by the Tenth Circuit. *Hernandez-Carrera* involved the consolidated cases of two Mariel Cubans under circumstances factually indistinguishable from those presented here. In both cases, the continued detention of the aliens was ordered pursuant to the "specially dangerous" provision of 8 C.F.R. § 241.14(f); both filed petitions pursuant to 28 U.S.C. § 2241, challenging the constitutionality of their continued detention; and the district courts in both cases granted *habeas* relief, believing that outcome was mandated by *Zadvydas* and *Clark*. *See Hernandez-*

*Carrera*, 547 F.3d at 1243-44. As the Tenth Circuit observed, however, "an agency's construction of a statute that it administers may be owed deference by courts when 'the statute is silent or ambiguous' on the issue in question and the agency's reading represents a 'permissible construction of the statute.'" *Id.* at 1244 (quoting *Chevron*, 467 U.S. at 843). Moreover, the court noted, "a 'prior judicial construction of a statute trumps [a subsequent] agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'" *Id.* (quoting *Brand X*, 545 U.S. at 982). Observing that in both *Zadvydas* and *Clark* the Supreme Court stated that 8 U.S.C. § 1231(a)(6) was ambiguous, *id.* at 1245, and that the agency's interpretation of the statute was "eminently reasonable," *id.* at 1257, the court held that "[s]eparation of powers principles dictates that we defer to the Attorney General's construction of the statute," *id.* at 1256.

In so holding, the court distinguished the two decisions relied upon by Petitioner here:

> We recognize that this holding leads us to conflict with the results reached by the two other circuits to consider the Attorney General's revised construction of § 1231(a)(6). *See Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008); *Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004). In those cases, the

17

> Fifth Circuit and Ninth Circuit reached a conclusion similar to that reached by the district court in this case: that the Attorney General's interpretation of § 1231(a)(6), as construed through 8 C.F.R. § 241.14, is unreasonable. *See Tran*, 515 F.3d at 485; *Thai*, 366 F.3d at 798-99. Both courts based their conclusions on the premise that the Supreme Court's decision in *Zadvydas* represented a final, definitive interpretation of 8 U.S.C. § 1231(a)(6). *See Tran*, 515 F.3d at 484 ("While it is true that *Zadvydas* found that § 1231(a)(6) was ambiguous . . ., the Government ignores the fact that the *Zadvydas* court resolved this ambiguity by imposing a requirement that the detention last no longer than reasonably necessary to effectuate removal."); *Thai*, 366 F.3d at 798 ("*[B]ecause Zadvydas construed* § 1231(a)(6) to forbid the post-removal-period detention of an alien once removal is no longer reasonably foreseeable . . ., we hold that Thai's continued detention is not authorized under § 1231(a)(6).") (emphasis added).
>
> We believe that the Fifth and Ninth Circuits erred by concluding that the Supreme Court could authoritatively and finally interpret § 1231(a)(6). *Brand X* makes clear that even after a court construes an agency's statute, "the agency may, consistent with the court's holding, choose a different construction, since *the agency remains the authoritative interpreter* (within the limits of reason) of such statutes." *Brand X*, 545 U.S. at 983, 125 S.Ct. 2688. We therefore think *Tran* and *Thai* mistakenly focused on whether the Supreme Court's construction of 8 U.S.C. § 1231(a)(6) in *Zadvydas* authorized the kind of detention at issue here. Rather, the proper inquiry is whether the Attorney General's revised construction of § 1231(a)(6) is *reasonable*.
>
> We are reassured in disagreeing with the Fifth and Ninth Circuit by the fact that

>  neither court considered the Supreme Court's *Brand X* decision.  In contrast, Judge Kozinski, dissenting from the denial of rehearing *en banc* in *Thai*, anticipated *Brand X* to reach a conclusion similar to that which we reach today.

*Hernandez-Carrera*, 547 F.3d at 1248 (emphasis in original; footnote omitted).

The persuasive reasoning of *Hernandez-Carrera* is consistent with Fourth Circuit precedent addressing similar issues. *See Fernandez v. Keisler*, 502 F.3d 337, 347-48 (4th Cir. 2007) (upholding, under *Brand X*, Board of Immigration Appeals' interpretation of ambiguous statute that conflicted with a prior Fourth Circuit decision); *Elm Grove Coal Co. v. Director, O.W.C.P.*, 480 F.3d 278 (4th Cir. 2007). Moreover, its conclusion finds support in the concurring opinion in *Clark*, in which Justice O'Connor opined that "[i]t is conceivable . . . that a longer period [of post-removal order detention beyond six months] is 'reasonably necessary,' to effect removal of inadmissible aliens as a class," and "[i]f the Government shows that to be true, then detention will be lawful within the meaning we ascribed to 8 U.S.C. § 1231(a)(6) in *Zadvydas*." *Clark*, 543 U.S. at 387. Finally, in the course of its analysis, the *Hernandez-Carrera* court addresses the due process concerns raised by Petitioner here. Observing the significant procedural safeguards in place under the regulatory scheme promulgated

after *Zadvydas*, the court found that "[t]he Attorney General's revised reading of § 1231(a)(6) before us today, finalized through notice-and-comment rulemaking, avoids [the] constitutional concerns" identified in *Zadvydas* and *Clark*. *Hernandez-Carrera*, 547 F.3d at 1253.

The court finds the reasoning of *Hernandez-Carrera* persuasive and will apply it to the near-identical facts of this case.  Accordingly, the court finds that 8 C.F.R. § 241.14(f)(1) is a reasonable interpretation of 8 U.S.C. § 1231(a)(6) entitled to *Chevron* deference.

### III. Conclusion

For the foregoing reasons, Petitioner's application pursuant to 28 U.S.C. § 2241 will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge